**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
_____
                              :
IRVIN FRAZIER,                :
                              :     Civil Action
            Plaintiff,        :     06-0096 (JAP)
                              :
      v.                      :     O P I N I O N
                              :
SOUTHWOODS STATE PRISON et al.,:
                              :
            Defendants.       :
_____:
```

**APPEARANCES:**

> IRVIN FRAZIER, pro se
> #410565/834805B
> East Jersey State Prison
> Rahway, New Jersey 07065

**JOEL A. PISANO, District Judge**

Plaintiff Irvin Frazier (hereinafter "Plaintiff") currently confined at the East Jersey State Prison, Rahway, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and his application to New Jersey Department of Corrections for his institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998). Plaintiff also submitted for filing his complaint (hereinafter "Complaint").

Plaintiff named the following parties as defendants in this

action: Southwoods State Prison; Judge Linda G. Baxton; employees (identified as "co-workers") of G.P.S. (identified as "Global Polite Satellite"); the Administration of New Jersey State Prison, together with the prison's dentist and correctional officer Hutcherson; Doctor Mactindale, identified as "psychotrist" at the Northen State Prison; the Administration and Office of Internal Affairs at the Rahway State Prison; and John Doe, a nurse at the East Jersey State Prison. Plaintiff's Complaint is accompanied by a substantial number of attachments, plus two physical exhibits, namely, Plaintiff's toothpaste container and a matchbook with matches used by Plaintiff as toothpicks.

Plaintiff alleges that Judge Baxton "ha[d] a tracking device placed in . . . [P]laintiff's tooth . . . [t]o play with . . . [P]laintiff['s] head." Compl. § 4(b). Plaintiff also asserts that employees of G.P.S. "were allowed to play with [Plaintiff's] head through the [electronic] chip." Id. § 4(c). Plaintiff further states that the Office of Internal Affairs at the Southwoods State Prison "violated [Plaintiff's] rights [by k]no[w]ing [that] the eye was tracking [P]laintiff [but failing to] help [Plaintiff to] retrieve [a] cuff key" (which, apparently, had some connection to the "eye"), while the prison's Administration "allowed the tracking unit [to] play with [Plaintiff's] thoughts [and] play with [his] head." Id. at 3.

In addition, Plaintiff maintains that the Administration of

New Jersey Stay Prison "let[] the tracker function with [Plaintiff's] body," while (1) the prison's dentist did "not put[] on record that [Plaintiff] received a [tooth] filling [which was] a tracking device," and (2) officer Hutcherson was "playing with [Plaintiff's] actions." Id. at 3-4. Finally, Plaintiff claims that "psychotrist" Mactindale "forced [Plaintiff to take] medicat[ion after Plaintiff] . . . documented that his head rate was 152," and Nurse Doe "overdos[ed Plaintiff] with psychotropic medication." Id. at 4-5.

The alleged satellite tracking caused Plaintiff to lose weight, made Plaintiff flatulent, controlled Plaintiff's physical movements, attached Plaintiff's mind, read Plaintiff's claims and manifested itself in Plaintiff's imagination as a "spirit." Id. at 13. In an effort to obtain "forensic evidence" of the "eye," Plaintiff used the matches from the matchbook to obtain the substance which, according to Plaintiff, was (1) constantly deposited between Plaintiff's teeth through food and toothpaste, and (2) enabled the tracking. See id. Plaintiff's Complaint concludes with an observation that, "[i]f [Plaintiff] bring[s] it [all] to [the attention of] Administration, [the Administration] will ship [Plaintiff] to [a] mental [hospital.] And NASA plays a big part in shutting them down. But to no avail." Id.

## DISCUSSION

### A.  Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit

to a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."
<u>Id.</u>

**B.   Fanciful, Fantastic and Delusional Claims**

The Supreme Court explained that a complaint is frivolous
within the meaning of 28 U.S.C. § 1915(d) if the complaint lacks an
arguable basis either in law or in fact.  See <u>Neitzke v. Williams</u>,
490 U.S. 319, 325 (1989).  Section 1915(d)'s term "frivolous," when
applied to a complaint, embraces not only inarguable legal
conclusions but also fanciful factual allegations.  <u>See</u> <u>id.</u>  The
Section accords judges not only the authority to dismiss a claim
based on an indisputably meritless legal theory, but also the power
to dismiss those claims whose factual contentions are clearly
baseless.  <u>See</u> <u>id.</u>; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).
In accordance with the Supreme Court's guidance articulated in
<u>Neitzke</u> and <u>Denton</u>, courts across the nation dismissed claims based
on sets of facts that were qualified as "fanciful, fantastic and
delusional."  <u>See</u> <u>Simmons v. Payne</u>, 2006 U.S. App. LEXIS 6796 (5th
Cir. Mar. 17, 2006) (an assertion of a vast conspiracy by all
levels of the state government and federal government was
manifestly frivolous); <u>Huey v. Raymond</u>, 53 Fed. Appx. 329 (6th Cir.
2002) (an inmate's claim that his food was poisoned by numerous
prison employees, resulting in various ailments, was properly
dismissed as irrational, wholly beyond belief, and the product of
delusion); <u>Brock v. Angelone</u>, 105 F.3d 952 (4th Cir. Va. 1997)

(court rejected the inmate's claims that he was being poisoned by an ingredient in the prison pancake syrup); Green v. Seymour, 59 F.3d 1073 (10th Cir. Okla. 1995) (a claim that all judges of the circuit and an attorney conspired to deny prisoner's access to the court was properly denied as frivolous); Allen v. Children's Servs. Div., 1993 U.S. App. LEXIS 34415 (9th Cir. Dec. 23, 1993) (a father's complaint alleging that the entire children's services department engaged in sexual conduct with his daughter was frivolous); Taylor v. Bunnell, 1993 U.S. App. LEXIS 16889 (9th Cir. June 28, 1993) (dismissal of prisoner's claim alleging that prison authorities drained his body fluids with carpet cleaning machine was affirmed because his claims were fanciful, fantastic, delusional, and clearly lacked an arguable basis in law or fact); Callahan v. Beaman, 1993 U.S. App. LEXIS 4211 (9th Cir. Feb. 22, 1993) (where the complaint alleged that the conspiracy was part of a larger scheme with the Seventh Day Adventists to get full control of one of the plaintiffs, the district court properly found the complaint to be frivolous and dismissed the action); Punchard v. New Mexico, 1992 U.S. App. LEXIS 1923 (10th Cir. Feb. 5, 1992) (inmate's complaint, in which he claimed state officials had no right to hold or charge him because he was the head of a foreign government, the Emperor of the Royal Democratic State of Continental Africa Kingdom, was frivolous); O'Neal v. Unknown Oakland Circuit Judge, 2006 U.S. Dist. LEXIS 9972 (W.D. Wis. Mar.

13, 2006) (where the claim asserted prolonged judicial conspiracy, the "allegations ha[d] a paranoid quality that ma[de] them difficult to accept as true").

In the same vein, the courts in the Third Circuit dismissed fanciful, fantastic and delusional allegations. See Armstead v. Briggs, 2004 U.S. Dist. LEXIS 3588 (D. Del. Feb. 17, 2004) (dismissing the claim requesting that the court set up an appointment for the plaintiff with President George W. Bush so that she could tell him that she had filed a lawsuit seeking his permanent appointment as the President of the United States); Noble v. Becker, 2004 U.S. Dist. LEXIS 480 (D. Del. Jan. 15, 2004) (the claims that the government officials and others had engaged in a vast conspiracy to violate his constitutional rights was clearly delusional); Williams v. Werster, 1994 U.S. Dist. LEXIS 8901 (E.D. Pa. June 30, 1994) (plaintiff's claim that he had uncovered evidence of a conspiracy by the former mayor to commit sabotage and espionage in order to establish ecclesiastical law and in some way interfering with U.S. commerce were fanciful, fantastic, or delusional); Robinson v. Love, 155 F.R.D. 535, 1994 U.S. Dist. LEXIS 7503 (E.D. Pa. 1994) (where plaintiff alleged that his relatives, neighbors, and friends were being held hostage by prison staff members, and that he was subjected to witchcraft and attempts to poison him with cyanide, the allegations were described as fanciful, fantastic, or delusional scenarios). In accord with the

above-cited decisions by the courts in this Circuit and other
national courts, this Court holds that Plaintiff's Complaint
describes fanciful, fantastic, or delusional scenarios which stand
genuinely outside the common experience of humankind, and should be
dismissed as irrational or wholly incredible.[1]

---

[1]
Moreover, Plaintiff's claim against Judge Baxton cannot be
entertained since Judge Baxton is protected by absolute immunity
with respect to all acts that the Judge performs within her
judicial capacity. The well-established doctrine of judicial
immunity has been adhered to by the Supreme Court for more than a
century. See Bradley v. Fisher, 80 U.S. 335 (1871). Judicial
immunity bestows upon judges absolute immunity from suit for acts
performed in their judicial capacity. See Cleavinger v. Saxner,
474 U.S. 193 (1985). Judicial immunity is "essential to protect
the integrity of the judicial process" because it allows judges to
exercise discretion vigorously and effectively, without fear that
they will be subjected to vexatious or frivolous litigation. Id. at
200. Similarly, claims against G.P.S. cannot be entertained since
G.P.S. is not a state actor. To recover against a defendant under
42 U.S.C. § 1983, a plaintiff must establish that the defendant
acted under "color of [state] law" to deprive him of a right
secured by the federal Constitution or laws. See Groman v. Twp. of
Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not
create substantive rights; rather, it provides an avenue of
recovery for the deprivation of established federal constitutional
and statutory rights. See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d
Cir. 1996); Groman, 47 F.3d at 633. "The color of state law . . .
is a threshold issue; there is no liability under [Section] 1983
for those not acting under color of law." Id. at 638. The color
of state law element in a section 1983 action requires that "the
conduct allegedly causing the deprivation of [the plaintiff's
rights] be fairly attributable to the State." Lugar v. Edmonson
Oil Co., 457 U.S. 922, 937 (1982). For the conduct to be "fairly
attributable" to the State, (1) the deprivation must be caused by
(a) the exercise of some right or privilege created by the State or
(b) by a rule of conduct imposed by it or by a person for whom the
State is responsible, and (2) the defendant must be a person who
may fairly be said to be a state actor, either because the person
(a) is a state official, (b) acted together with or has obtained
significant aid from state officials, or (c) performed conduct
otherwise chargeable to the State. See id. at 936-39. None of
Plaintiff's allegations suggest that G.P.S. is a state actor.

**<u>CONCLUSION</u>**

Plaintiff application to proceed <u>in forma pauperis</u> is GRANTED. Since Plaintiff seeks to assert a claim bearing no relations to experiences of humankind and describing fanciful, fantastic, or delusional scenarios, Plaintiff's complaint is DISMISSED as frivolous.

An appropriate Order accompanies this Opinion.

s/Joel A. Pisano

**JOEL A. PISANO**
**United States District Judge**

Dated: April 17, 2006

---

Moreover, this Court's attempts to detect such entity as "Global Polite Satellite" proved fruitless leading the Court to conclude that the entity is nothing but a figment of Plaintiff's imagination.

Page -9-